United States Court of Appeals
Fifth Circuit

**F I L E D**

May 12, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-41085
(Summary Calendar)

_____

WALTER E. MARTIN,

        Plaintiff-Appellant,

   v.

BAYLAND INCORPORATED,

        Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas, Galveston
No. 3:04-CV-319

---

Before SMITH, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Appellant Walter Martin sued Appellee Bayland Incorporated ("Bayland") alleging discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634("ADEA") and the Texas Commission on Human Rights Act, TEX. LAB. CODE ANN. § 21.051 (Vernon 2006)("TCHRA"). Bayland moved for summary judgment, which the district court granted on May 31, 2005.

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

Martin now appeals.

## I. Background & Procedural History

Martin was born in 1930 and, from 1982 through 2003, worked at Bayland, a manufacturer of plastic products. For approximately eight years, he worked as an equipment operator; after that, and until he was terminated, Martin worked as a quality controller. Over the course of his employment with Bayland, Martin fell at least seven times. Following a December, 2002 fall at the office, which ultimately landed Martin in the hospital for hip surgery, Jim Moses, Bayland's owner, approached Martin to terminate his employment. In January 2003, he told Martin: "I think it's time to hang it up and you – for you to retire." Martin submitted a claim to the Equal Employment Opportunity Commission, which issued a right to sue letter. On May 19, 2004, Martin sued in the U.S. District Court for the Southern District of Texas, which granted Bayland summary judgment.

## II. Standard of Review

We review a district court's grant of summary judgment *de novo*. Pegram v. Honeywell, Inc., 361 F.3d 272, 278 (5th Cir. 2004). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue as to a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The evidence must be construed in a light most favorable to the non-moving party and doubts resolved in its favor. Id.

III. Discussion

Martin argues that the district court's dismissal of his claim was in error because he presented sufficient direct or, alternatively, circumstantial evidence of discriminatory animus.

A. Direct Evidence

Martin argues that Moses' remark—"I think it's time to hang it up and you – for you to retire"-constitutes direct evidence of discrimination. Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). Martin's evidence cannot be considered direct because it requires one to infer that he was fired because of his age based on Moses' comment that it was time for him to

3

retire.[1]  There is a link between retirement and age, but it is not a necessary one.  Martin presents no direct evidence.

  B. Circumstantial Evidence

Martin does not present sufficient circumstantial evidence of discriminatory animus to survive summary judgment.  ADEA "[p]laintiffs producing only circumstantial evidence of discriminatory animus . . . must negotiate the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green."  Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  In the McDonnell Douglas analysis, once a plaintiff makes out a prima facie case of discrimination under Title VII, he or she is entitled to a presumption of discrimination, which the defendant may rebut by presenting a legitimate, nondiscriminatory reason for its actions.  Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999).  If the defendant succeeds in rebutting the presumption, the plaintiff must establish that the defendant's proffered reason for its action is pretextual.  Id.

In granting summary judgment, the district court concluded that Martin failed to demonstrate that Bayland's proffered

---

  [1] In Sandstad, we rejected as direct evidence comments requiring less of an inferential leap to animus than that required here.  Stock analysts were quoted as complaining about "too much grey hair" in company management and a supervisor told the plaintiff that the Chief Executive Officer had decided to "skip a generation" in selecting plaintiff's replacement.  309 F.3d at 895.  The Sandstad comments more directly implicate age than the word "retire," at issue here.

4

legitimate, non-discriminatory reasons for firing him, economic considerations and safety, were pretextual. Martin argues that safety is not validly considered, and that both reasons are unworthy of credence and demonstrably false.

There are two ways to avoid summary judgment in an ADEA case such as this, following the defendant's proffer of its legitimate, non-discriminatory reason: "(1) the plaintiff may offer evidence showing that the defendant's proffered nondiscriminatory reasons are false; or (2) the plaintiff may offer evidence showing that his age was a motivating factor for the defendant's adverse employment decision." Machinchick, 398 F.3d at 351 (citing Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)).

Martin first dismisses Bayland's safety rationale. Based on Moses' affirmative reply in deposition that economic reasons were the only ones for which Martin was terminated, Martin argues the safety rationale is "attorney dicta," mere speculation unsupported by admissible evidence. However, later in the same deposition, Moses discusses Martin's being a hazard to himself and other co-workers. Additionally, in its response to Martin's interrogatories, Bayland wrote that "Plaintiff's position was eliminated for economic reasons. Additionally, the Plaintiff was unable to perform his duties in a safe manner."[2] Rule 56

---

[2] We find no merit to Martin's argument that "perform[ing] his duties in a safe manner" is a reason distinct from being a

5

specifically identifies answers to interrogatories as a species of evidence on which a court may rely in granting summary judgment.  The district court did not err in considering safety as one of Bayland's legitimate, nondiscriminatory reasons.

Martin attacks both the economic and safety rationales as false and unworthy of credence.  He points to the fact that Moses did not mention either when he informed Martin of his termination, telling him instead that it was time to retire, as evidence of the rationales' falsity.  This omission does not suggest that either rationale is false.  Then, turning from imbuing Moses' words with extra meaning to stripping them of any, Martin argues, citing Reeves v. Sanderson Plumbing Products, Inc., that the vacuity of the words is proof of an attempt to cover up the real reason for the termination, discrimination.  530 U.S. 133 (2000).  Reeves is not helpful to Martin's cause.  There, the Supreme Court held that a defendant's proof that an employer's proffered legitimate, nondiscriminatory reason for an adverse employment action was unworthy of credence could allow for a finding of discrimination.  Id. at 147-48.  Here, Martin provides only the reasons themselves as evidence of their lack of credence; no independent facts support his theory.

Martin also argues that pretext must be inferred because Bayland's legitimate, nondiscriminatory reasons conflict.

hazard to himself and to other employees.

Selectively quoting statements by Moses and Bayland, he identifies four reasons: (1) retirement, (2) safety, (3) elimination of the position and (4) economic reasons. The record supports Bayland's repeated claim that Martin was terminated because of safety and economic concerns,[3] and he fails to establish how these reasons conflict.

Martin contends the safety rationale is speculative, legally insufficient and demonstrative of disparate treatment. Given the number of accidents Martin admitted to in his deposition, we find no error in the district court's characterization of a "pattern" of accidents. Martin argues that Dothard v. Rawlinson precludes Bayland from justifying the termination using Martin's safety. 433 U.S. 321 (1977). We have never adopted this view of Dothard. See e.g., Chiari v. City of League City, 920 F.2d 311, 316 (5th Cir. 1991) ("[T]he holding of Dothard supports a conclusion that the City *can* exclude Chiari from a job because of fears about his safety.") (emphasis in the original). Martin's attempt to establish disparate treatment by demonstrating that another

_____

[3] Two of these "reasons" are not actually proffered by Bayland. Forced retirement means nothing apart from the reasons driving it. Martin attempts to assign independent meaning to Moses' comment that it was time to retire, imputing to it ageism. This reading presupposes the discriminatory animus it is intended to prove. Likewise, Martin appears to manufacture position elimination as an independent reason proffered by Bayland for his dismissal. The letter to the EEOC on which he relies does not support his theory as it clearly identifies safety as a major concern, mentioning that the position had been eliminated only in passing.

worker also fell on the job does not succeed because he does not establish how that worker's single fall demanded the same treatment as the pattern of falls exhibited by Martin. He does not succeed in rebutting Bayland's safety rationale.

Martin also attacks Bayland's economic rationale, denying the company had an economic need to terminate him. The only evidence he proffers to this effect is Bayland's timing in terminating him and several notations on a company record of staff reduction, which indicate certain employees retired and were fired, rather than being laid off. With respect to the notations, while there is a lack of clarity from the record as to why each listed individual left Bayland's employment, it is not disputed that staff rolls were reduced by 50%. Martin's timing argument is that the company's failure to fire him months before, when economic problems became manifest and before things began to improve, demonstrates that the economic justification is pretextual. Because they are not inconsistent with terminating an employee for economic reasons, neither Bayland's failure to fire Martin earlier nor the fact its finances had begun to improve suffice to establish that the economic rationale was pretextual.

Martin fails to rebut Bayland's proffered legitimate, nondiscriminatory reasons for his termination. Pointing only to Moses' "it's time to retire" remark and two other innocuous

8

retirement references,[4] Martin also fails to establish that age was a motivating factor in his termination.  The word "retire," does not, by its very use, bear this kind weight.

IV. Conclusion

For the reasons above, the judgment of the district court is AFFIRMED.

---

[4] In a company record, Martin was listed as having retired. Additionally, a workers' compensation insurance adjustor testified that, in March 2003, after Martin's December fall when he was not working and was receiving compensation for his injury, Moses told the adjuster Martin had retired.  If anything, these references imply Moses believed Martin had retired.