**Virginia LAY, Plaintiff**

**v.**

**SINGING RIVER HEALTH SYSTEM, Defendant.**

**CAUSE NO. 1:15CV130-LG-RHW**

United States District Court, S.D. Mississippi, Southern Division.

Signed June 2, 2016

Jim D. Waide, III, Ronnie Lee Wood-
ruff, Waide & Associates, P.A., Tupelo,

MS, Maureen Blackburn Jennings-PHV, Maureen Blackburn Jennings, Attorney At Law, Houston, TX, for Plaintiff.

Jaklyn L. Wrigley Steven R. Cupp Fisher & Phillips, LLP Gulfport, MS for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

### LOUIS GUIROLA, JR., CHIEF UNITED STATES DISTRICT JUDGE

BEFORE THE COURT is the Motion [51] for Summary Judgment filed by Defendant Singing River Health System in this Age Discrimination in Employment Act case. The issues have been fully briefed. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that Plaintiff Lay has failed to show there is a question of material fact regarding whether age was a factor in Singing River's decision to terminate her employment. Accordingly, the Motion will be granted and this case dismissed.

### BACKGROUND

Lay was hired in 1999, when she was fifty years old, as Singing River's Director of Managed Care. (Lay Dep. 7, 17, ECF No. 57-1). In 2014, news of Singing River's serious financial difficulties was widely publicized on the Mississippi Gulf Coast. Singing River undertook a "plan to restructure the entire leadership team" in which "employees were laid off, positions were eliminated, and departments were restructured." (Summerlin Aff. 1, ECF No. 54-1).

At the time, Lay reported to Chris Morgan, the Vice President of Clinical Integration. Morgan was informed by CEO Kevin Holland that Morgan's department would have to be restructured. (Morgan Dep. 15, ECF No. 51-4). The decision to terminate Lay's employment was made by Morgan, with assistance from human resources officer Craig Summerlin, (Summerlin Dep. 16, ECF No. 51-5), and approval from Holland. (Morgan Dep. 17-19; Holland Dep. 13, ECF No. 57-7). Lay met with Morgan and Summerlin on April 22, 2014, when Morgan told her she was "going to have to retire." (Lay Dep. 27). Summerlin explained to her that it would be "a good deal for me to wait until June to retire for the better payout or better benefits." (*Id.* at 28-29). At the end of the meeting, she asked Morgan, " 'Why are you doing this to me?' and he said 'We're looking for people like you who can get the retirement and make the high salary.' " (*Id.* at 28). Lay asserts that she did not understand that her position was going to be terminated when Morgan told her she was going to have to retire. A few days later, Morgan sent an email to the rest of the department announcing Lay's retirement. (Pl. Resp. Ex. 13, ECF No. 57-13). Lay sent Morgan a memo almost two weeks later, stating that she was not willing to retire. (Pl. Resp. Ex. 14, ECF No. 57-14). Lay does not remember having any discussions with Morgan or Summerlin about the memo, (Lay Dep. 43), and her retirement was effective on June 13, 2014.

Morgan's position was also slated for elimination, and he began working for another employer shortly before Lay's last day in June. (Morgan Dep. 7-8, 10, 33). Holland gave Morgan and Lay's job functions to Chief Financial Officer Lee Bond, who "divvied up some of the role" to Brian Argo, Executive Director of Finance, and a number of employees who were previously in Lay's department. (Holland Dep. 19-10; Bond Dep. 31, 33-34, ECF No. 57-8). Bond also incorporated some of Lay's job functions into a new "Director of Collaborative Care Network" position. (Bond Dep. 28). Lay did not apply for the position because of the requirement for a master's degree,

although she believed it entailed "99.9 percent of my job duties." (Lay Dep. 45). The person hired was thirty-two year old Justin Rickley, who is about two-thirds completed with his master's degree coursework. (Summerlin Aff. 2, ECF No. 54-1; Rickley Dep. 13, ECF No. 57-17). Rickley's job duties entail more than managed care functions formerly performed by Lay. (Argo Dep. 13-15, ECF No. 57-16). Rickley does "a pretty significant amount of contract modeling [ ] and analyzing. . . . those are some of the major things that he does." (*Id.* at 14).

Lay filed a charge of age discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue. (Compl. Ex. A, B, ECF Nos. 1–1, 1–2). This lawsuit followed.

#### DISCUSSION

Under the ADEA, an employer cannot "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 308–09 (5th Cir. 2004). Singing River moves for summary judgment under Fed. R. Civ. P. 56, which in employment discrimination cases requires application of a burden-shifting analysis.

A party that establishes a *prima facie* case of age discrimination "raises an inference of unlawful discrimination." *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41 (5th Cir.1996). "The burden of production then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the challenged employment action. The defendant may meet this burden by presenting evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Id.* (quoting *St.*

*Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). "If the defendant meets its burden, the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination." *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 350 (5th Cir.2005).

#### 1. Lay's *Prima Facie* Case

■ The parties set out and argue the *prima facie* elements for a standard ADEA discrimination claim involving termination. However, Lay was clearly terminated as part of a reduction-in-force, and therefore the Court applies the Fifth Circuit's slightly different *prima facie* elements for a reduction-in-force case. This requires a party to make out a *prima facie* case of age discrimination by showing "(1) that he is within the protected age group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4) 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Nichols,* 81 F.3d at 41 (quoting *Amburgey v. Corhart Refractories Corp., Inc.,* 936 F.2d 805, 812 (5th Cir.1991)).

A *prima facie* case "is fairly easily made out." *Amburgey,* 936 F.2d at 812. Given that the parties have argued different *prima facie* elements—concentrating on whether Lay was replaced by a younger worker—the Court will assume without deciding that Lay has cleared the relatively low hurdle of establishing a *prima facie* case.

#### 2. Singing River's Reasons For Its Decision And Pretext

Singing River has articulated a legitimate, non-discriminatory reason for its

decision—the elimination of the position pursuant to an overall restructuring and reduction in force. *See EEOC v. Tex. Instruments, Inc.,* 100 F.3d 1173, 1181 (5th Cir.1996) (noting that a reduction in force is a legitimate, non-discriminatory reason for discharge). Thus, the question is pretext. To establish pretext, Lay must show both that the employer's reason was false, and that discrimination was the real reason for her termination. *Flanner v. Chase Inv. Servs. Corp.,* 600 Fed.Appx. 914, 918 (5th Cir.2015).

■ In an effort to demonstrate that the reduction in force was a pretext for age discrimination, Lay points first to the fact that her termination was in the form of a forced retirement, arguing that "telling a person that they must retire is evidence of age discrimination." (Pl. Mem. 17, ECF No. 56). However, the Fifth Circuit has stated that "[t]he word 'retire,' does not, by its very use," establish that age was a motivating factor in termination. *Martin v. Bayland, Inc.,* 181 Fed.Appx. 422, 426 (5th Cir.2006). *See also Hilde v. City of Eveleth,* 777 F.3d 998, 1006 (8th Cir.2015) (" '[R]etire' and 'age' are not synonyms."). Morgan and Summerlin both testified they determined that Lay's position would be terminated, and they discussed retirement because Lay was very close to being eligible for Singing River retirement benefits. Morgan in fact delayed termination of Lay's position until she was eligible for retirement benefits. Telling Lay she must retire does not tend to show that age discrimination, rather than the restructuring and reduction in force, was the true reason Singing River terminated her. *See Kilgore v. Brookeland Ind. Sch. Dist.,* 538 Fed.Appx. 473, 477 (5th Cir.2013) (comment concerning retirement eligibility did not establish pretext).

■ Next, Lay argues that she was an excellent employee. In the context of a reduction in force, the fact that an employee is qualified for his job is less relevant, as some employees may have to be let go despite competent performance. *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 124 (5th Cir.1992); *see also Chavez v. URS Fed. Tech. Servs., Inc.,* 504 Fed.Appx. 819, 821 (11th Cir.2013) ("During a reduction-in-force, competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired."). However, the Court "can infer pretext if the plaintiff was 'clearly better qualified than the employee[ ]' who was not laid off." *Baumeister v. AIG Glob. Inv. Corp.,* 420 Fed.Appx. 351, 355 (5th Cir.2011). Lay argues that her duties were initially taken over by thirty-one-year-old Argo, who was later assisted by a thirty-two-year-old new hire. Lay does not argue that she was clearly better qualified than these two persons. She argues that her salary was less than Argo's, making it unlikely that assigning her duties to him saved Singing River money. In regard to the new hire, she argues that he, like her, lacked a master's degree. Neither argument establishes pretext because neither shows that Lay was the clearly better qualified employee. *Daniel v. Universal ENSCO, Inc.,* 507 Fed.Appx. 434, 439 (5th Cir.2013); *Baumeister,* 420 Fed.Appx. at 355.

Lay also asserts that Singing River did not save money by eliminating her position, and there were other options it could have taken, "such as eliminating younger directors whose departments were losing money ... or an across the board pay cut...." (Pl. Mem. 19, ECF No. 56). Lay can not raise an issue of pretext by questioning Singing River's business judgment about the best way to manage its financial crisis. *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 391 (5th Cir.2007); *Acevedo–Parrilla v. Novartis Ex–Lax,*

*Inc.*, 696 F.3d 128, 140 (1st Cir.2012). The Fifth Circuit has instructed:

> The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.

*Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir.2010) (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir.1988)).

■ Lay next states that she told Elaine Hiers, the retirement specialist in the human resources department, that she was being let go because of her age. Hiers responded that she sees that all the time. Lay contends this is an admission of a party opponent and therefore admissible evidence of pretext. Lay does not contend that Hiers was involved in the decision to terminate her employment.

The applicable rule excludes from the definition of hearsay a statement "offered against an opposing party . . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2). Where alleged statements concern an employee's termination, the declarant must have been involved in the decision to terminate the employee. *See Ramirez v. Gonzales*, 225 Fed.Appx. 203, 210 (5th Cir. 2007) ("Longoria's comments to Walker do not fall within the party opponent exception because they concerned matters outside the scope of her employment, since Longoria was not involved in the decision to terminate Ramirez."). Moreover, Hier's comments amount to no more than stray workplace remarks and are not evidence of discrimination. *See Krystek v. Univ. of So. Miss.* 164 F.3d 251 (5th Cir.1999).

■ Next, Lay asserts that "of the ninety-seven (97) employees let go, almost two-thirds was over the age of forty (40)." (Pl. Mem. 19, ECF No. 56). The Fifth Circuit has explained that such statistical evidence usually cannot rebut the employer's articulated nondiscriminatory reasons.

> [G]ross statistical disparities resulting from a reduction in force or similar evidence may be probative of discriminatory intent, motive or purpose. Such statistics might in an unusual case provide adequate circumstantial evidence that an individual employee was discharged as part of a larger pattern of layoffs targeting older employees. *This is not to say that such statistics are enough to rebut a valid, nondiscriminatory reason for discharging a particular employee. Generally, they are not. . . . [P]roof of pretext, hence of discriminatory intent, by statistics alone would be a challenging endeavor.*

*Tex. Instruments Inc.*, 100 F.3d at 1184–85 (emphasis in original) (quoting *Walther v. Lone Star Gas Co.*, 977 F.2d 161, 162 (5th Cir.1992)). "The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." *Id.* at 1185 (citing *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)).

Lay simply attaches a list of the ninety-seven terminated employees with associated identifiers such as job title, age, race, sex and years of service. (Pl. Resp. Ex. 20, ECF No. 57-20). However, there is no similar information about the population from which this list was generated. Without some indication that there is a "gross statistical disparity" between the entirety of the pool of Singing River employees and the employees selected for the reduction in

force, the list does not provide evidence of pretext.

■ Lay next attempts to show a culture or pattern of discriminating against older workers through evidence of two other employees. The first is fifty-year-old Sandra Murray, who was the interim IT director for two years, but not selected for the permanent IT director position. Murray complains that the decision maker, Larry Shoemaker, promoted a younger male into the position instead. (Murray Dep. 20, ECF No. 57-21). The second is sixty-nine-year-old Hattie Williams, who worked part time as a benefits specialist in the human resources department. Her supervisor, Craig Summerlin, eliminated her position in the reduction in force. (Williams Dep. 9, ECF No. 57-23).

In the Fifth Circuit, attempting to show pretext through an employer's treatment of employees in the same protected group requires that the comparators be similarly situated.

> Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff. This court and others have held that testimony from former employees who had different supervisors than the plaintiff, who worked in different parts of the employer's company, or whose terminations were removed in time from the plaintiff's termination cannot be probative of whether age was a determinative factor in the plaintiff's discharge.

*Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir.2000) (citation omitted). It is apparent that neither Murray nor Williams is similarly situated with Lay.

There is no commonality between departments or supervisors, and Murray was not terminated. Evidence regarding their experiences is not evidence of pretext.

■ Finally, Lay attempts to show pretext through certain age– and gender-based comments purportedly made by Holland. Lay presented deposition testimony from Windy Taylor, in which Taylor related comments Holland made sometime in 2005,[1] that older women did not belong in management because, among other things, they went "cuckoo for cocoa puffs" after menopause. (Taylor Dep. 17-18, 94-95, ECF No. 57-19). Taylor never heard Holland make derogatory remarks, including age-related remarks, about Lay specifically. (*Id.* at 28, 60).

Assuming Holland, as CEO, was a decision-maker regarding Lay's termination, his remarks can be probative of discriminatory conduct if there is other evidence of pretext. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir.2003) ("After *Reeves*, . . . so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent."); *see also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir.2012) ("Where a plaintiff offers remarks as circumstantial evidence *alongside other alleged discriminatory conduct*, . . . we apply a more flexible two-part test.") (emphasis added) (citations omitted); *Cervantez v. KMGP Servs. Co. Inc.*, 349 Fed.Appx. 4, 10–11 (5th Cir.2009) ("[A] comment is not evidence of discrimination if it is the sole proof of pretext."); *Bugos v. Ricoh Corp.*, No. 07–20757, 2008 WL 3876548, at *6 (5th Cir. Aug. 21, 2008) ("Because Brown's workplace comments are the only circumstantial evidence of

---

1. Ms. Taylor worked as an administrative assistant for Holland from 2005 until 2014. Although she references several instances during that period when he commented negatively about women over 40, she generally did not testify about the dates the comments were made.

pretext, and, standing alone, they are not probative, we affirm the district court's grant of summary judgment.").

Without other evidence of pretext, the Court cannot consider Holland's comments, almost ten years past, to be evidence of discrimination. *See Bugos*, 2008 WL 3876548, at *5 (where the supervisor's comments that "women work harder than men," "women are better employees than men," and "women are better received by the customer than men" were the only evidence of pretext, those comments were not probative). Lay has failed to present any evidence of pretext other than age-related comments, and she cannot defeat summary judgment on her ADEA claim by relying on this evidence alone.

CONCLUSION

Lay has failed to provide competent summary judgment evidence supporting her allegations that Singing River Health System terminated her employment because of age. Because Singing River has shown there is no question of material fact for the jury, summary judgment should be granted and this case dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [51] for Summary Judgment filed by Singing River Health System is **GRANTED**. Plaintiff's claims are **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 2nd day of June, 2016.